**UNITED STATES, Plaintiff,**

**v.**

**F.A.G. BEARINGS CORPORATION, Defendant.**

No. 83–9–01314.

United States Court of International Trade.

Oct. 4, 1984.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C. (A. David Lafer and J. Kevin Horgan, Washington, D.C., on the motion), for plaintiff.

Heron, Burchette, Ruckert & Rothwell, Washington, D.C. (John M. Dowd, New York City, and Thomas A. Rothwell, Jr., Washington, D.C., on the motion); Whitman & Ransom, New York City (Andrew L. Lipps, New York City, and W. Michael Kramer, Washington, D.C., on the motion), for defendant.

**563**

## MEMORANDUM OPINION AND ORDER

CARMAN, Judge:

In this action where plaintiff seeks to recover lost duties as well as penalties for false descriptions of imported merchandise, defendant moves to dismiss the second amended complaint pursuant to Rules 8(a), 9(b) and 12(b)(5) of the Rules of the United States Court of International Trade, for failure to state a claim upon which relief can be granted.[1] Defendant urges as follows: (1) count I of the second amended complaint fails to state the circumstances allegedly constituting fraud with the particularity required by rule 9(b); (2) counts II through VI fail to satisfy the requirements of rule 8(a)(2), because they do not contain a plain statement of the claim showing that plaintiff is entitled to relief; (3) the complaint's allegations of false descriptions of merchandise fail to state a claim upon which relief can be granted since "they are based solely on extrapolations which cannot substitute for proof of actual false descriptions"; (4) counts IV and V fail to state a claim because 19 U.S.C. § 1592(c)(2)(B) and (c)(3)(B) are not applicable where the only possible materiality of the false statement or omission at issue is to the assessment of duties; and, (5) each of the counts fails to state a claim upon which relief can be granted because the merchandise was not entered "by means of" the alleged false statements as required by section 1592(a).

Plaintiff maintains that the second amended complaint satisfies the particularity requirement of rule 9(b) and that the facts alleged support an inference of fraud. Plaintiff further contends that defendant's merchandise was entered "by means of" false statements and that 19 U.S.C. § 1592

---

1. Rule 8(a)(2) of the Rules of this Court provides in part:

A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief....

Rule 9(b) in part reads:

In all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity.

was not intended to apply only to the entry of prohibited merchandise.

The contentions set forth in defendant's motion to dismiss are rejected for the reasons assigned below.

## BACKGROUND

Defendant has previously presented this court with a similar challenge to the sufficiency of the complaint in this action. In *United States v. F.A.G. Bearings Corp.*, 7 C.I.T. ——, Slip Op. 84–4 (Jan. 25, 1984) (F.A.G. I), the court conditionally denied defendant's motion to dismiss the first amended complaint. The court, however, ordered plaintiff to file a second amended complaint in conformity with the particularity requirement of rule 9(b) and the notice requirement of rule 8(a)(2).[2] On February 24, 1984, plaintiff filed the second amended complaint. This complaint, while substantially mirroring the F.A.G. I complaint, does contain several added paragraphs pertaining to the circumstances surrounding the alleged fraud.[3]

Those paragraphs state:

2. In F.A.G. I, the first amended complaint in relevant part alleged:

6. The documents filed with the United States Customs Service in connection with the aforementioned consumption entries were material and false in that at least 14% of the merchandise entered, introduced or attempted to be entered or introduced into the United States was falsely described and, specifically, the ball/roller bearings and components thereof were described by a part number different from the part number of the actual bearing or component thereof entered into the United States.

7. The documents filed with the United States Customs Service in connection with the aforementioned consumption entries were material and false in that the price stated for the merchandise on said documents was represented on said documents and/or by written or oral statements to be the price paid by F.A.G. for said merchandise when in fact it was not.

8. Defendant F.A.G. knew or should have known that the part numbers of the bearings or components thereof actually entered, introduced or attempted to be entered or introduced into the United States were different from the part numbers stated on the documents submitted to the United States Cus-

6. On or about November 28, 1978, a customs officer discovered, during an inspection of a shipment of bearings being entered into the commerce of the United States from the Toledo Foreign Trade Zone by F.A.G.-U.S., that many of the part numbers appearing on the individual bearing boxes had been altered by inking-out or obliterating a suffix portion of the part number. Upon further examination, the customs officer discovered that the part numbers appearing on some of the boxes were different from the part numbers appearing on the bearings contained in the boxes.

7. On or about December 28, 1978, in response to a Customs Service request for information as to the "marking-out" of bearing descriptions, F.A.G.-U.S. submitted to Customs a letter signed by Lewe Martin, attorney for F.A.G.-U.S.; an affidavit of Karlheinz Brand, General Manager-Sales Coordination for F.A.G.-Germany; a response by F.A.G.-Germany to certain questions propounded by the Customs Service; and computer printouts purportedly listing all of the

toms Service in connection with said entry introduction or attempted introduction. Defendant F.A.G. knew or should have known that the prices stated for the imported merchandise on the documents submitted to the U.S. Customs Service in connection with the entry, introduction or attempted entry or introduction of said merchandise were not the prices it paid for said merchandise.

Because these allegations "allege[d] fraud in a conclusory form without setting forth the circumstances constituting the fraud with any particularity," the Court held that the prescriptions of rules 8(a)(2), and 9(b) had not been met. *See F.A.G. I*, 7 C.I.T. ——, ——, Slip Op. 84–4, at 2–3 (Jan. 25, 1984). The court was particularly concerned with paragraph 6 of the first amended complaint which merely alleged that "at least 14% of the merchandise ... was falsely described." *Id.* at 3; *see infra* note 3. Accordingly, the plaintiff was ordered to file a second amended complaint or risk dismissal of the action.

3. It should be noted that appended to both the first and second amended complaints is a computer read-out list of every entry that defendant F.A.G. has made into the United States. The print-out, consisting of hundreds of pages, contains approximately 27,000 entries.

"substituted" bearings shipped to the Toledo Foreign Trade Zone during the period December 1, 1977 through November 30, 1978.

8. In the affidavit referred to in paragraph 7 above, Mr. Brand stated that it was a standard practice at F.A.G.-Germany to fill orders for particular types of bearings by supplying different types of bearings which are of equal or better quality. Mr. Brand further stated that substitutions are accomplished by reboxing the bearings or "marking-out" the boxes, and that substitutions are not reflected on commercial invoices.

9. The computer printouts referred to in paragraph 7 above disclosed that approximately 11% of all bearings shipped to the Toledo foreign trade zone during the period December 1, 1977, through November 30, 1978, were falsely described on customs entry documents.

10. In the letter referred to in paragraph 7 above, Mr. Lewe B. Martin, attorney for F.A.G.-U.S., stated that the period December 1, 1977, through November 30, 1978, is representative of shipments to the Toledo foreign trade zone during any prior twelve months.

11. On or about January 17, 1979, the United States Customs Service discovered in the correspondence files of Mr. Sam Mehta, Sales Administration Manager for F.A.G.-U.S., a September 4, 1978 computer printout identifying substitutions not identified in the printouts referred to in paragraph 7 above.

12. Sometime after January 19, 1979, Mr. Mehta provided the Customs Service with a second computer printout identifying substitutions of bearings during 1978, including substitutions not identified in the computer printouts referred to in paragraph 7 above.

13. The computer printouts referred to in paragraph 7, 11 and 12 above indicate that during 1978 at least 14% of the bearings shipped to F.A.G.-U.S.'s warehouse in the Toledo foreign trade zone by F.A.G.-Germany were falsely described on customs entry documents.

14. The documents filed with the United States Customs Service in connection with the consumption entries referred to in paragraph 4 above were material and false in that at least 14% of the merchandise entered, introduced, or attempted to be entered or introduced into the United States was falsely described and, specifically, the ball/roller bearings and components thereof were described by a part number different from the part number of the actual bearing or component thereof entered into the United States.

15. In a March, 1983 interview with customs agents, Manfred Kubler, chairman of the Board and Chief Executive Officer of F.A.G.-U.S., admitted that for the year 1975 F.A.G.-U.S. had received a 4% bonus on all purchases that it made from F.A.G.-Germany, which bonus was not reported to the United States Customs Service.

16. Eight credit notes issued by F.A.G.-Germany to F.A.G.-U.S. indicate that a 4% discount was granted to F.A.G.-U.S. in each quarter of the years 1975 and 1978, which discounts were not reported to the United States Customs Service.

17. Documents obtained from F.A.G.-U.S. demonstrate that during the year 1977 F.A.G.-U.S. was required to pay to F.A.G.-Germany a retroactive price increase on imported bearings, which price increase was not reported to the United States Customs Service.

18. The documents filed in connection with the consumption entries listed in paragraph 4 above, which were made during the years 1975, 1977 and 1978, were material and false in that the price stated for the merchandise on said documents was represented on said documents and/or by written or oral statements to be the price paid by F.A.G.-U.S. for said merchandise when in fact it was not.

19. Upon information and belief based upon the facts stated in paragraphs 15, 16 and 17 above, the documents filed with the United States Customs Service in connection with the con-

sumption entries listed in paragraph 4 above, which were made during the years 1972, 1973, 1974 and 1976, were material and false in that the price stated for the merchandise on said documents was not, in fact, the price paid by F.A.G.-U.S. for said merchandise.

20. Defendant F.A.G.-U.S. knew or should have known that the part numbers of the bearings or components thereof actually entered, introduced, or attempted to be entered or introduced into the United States were different from the part numbers stated on the documents submitted to the United States Customs Service in connection with said entry, introduction, or attempted introduction. Defendant F.A.G.-U.S. knew or should have known that the prices stated for the imported merchandise on the documents submitted to the U.S. Customs Service in connection with the entry, introduction, or attempted entry or introduction of said merchandise were not the prices it paid for said merchandise.

The court must now determine whether the second amended complaint satisfies rules 8(a)(2) and 9(b).

### I.  THE ALLEGED FRAUD

Central to plaintiff's theory of fraudulent importation here is the practice of "substitution" which defendant allegedly engaged in between January 1, 1972 and December 30, 1978. This practice refers to the shipment of merchandise, in this case ball/roller bearings, which is equal to or in excess of the invoiced value, but which is not the precise merchandise described in the Customs entry documents. Customs agents allegedly became aware of this with respect to the F.A.G. importations when, on about November 28, 1978, an inspection of F.A.G. merchandise revealed that certain numbers on the packing crates had been altered. In affidavits to Customs officials, the F.A.G. Bearings Corporation readily ad-

mitted that the substitutions took place and that it was a standard business practice.

In addition, the second amended complaint alleges that certain "bonuses," "discounts," and "price increases" from F.A.G.'s parent to its U.S. subsidiary had gone unreported to Customs. The second amended complaint further alleges that defendant knew the documents contained false statements or omissions and were intended to defraud the United States and deprive it of lawful duties owed. Plaintiff maintains that these allegations, prima facie, satisfy rules 8(a)(2) and 9(b) as well as 19 U.S.C. § 1592.

### II.  THE SECOND AMENDED COMPLAINT AND RULES 8(a)(2) AND 9(b)

The particularity requirement for pleading fraud existed at common law and under former code practice. *See Stearns v. Page*, 48 U.S. (7 How.) 819, 829, 12 L.Ed. 928 (1849); Note, *Pleading Securities Fraud Claims with Particularity Under Rule 9(b)*, 97 Harv.L.Rev. 1432, 1432 (1984). Rule 9(b),[4] while multi-purposed, counts among its primary objectives the "apprising of defendant of the claim against him." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1297, at 404 (1969); *see McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228–29 (1st Cir.1980). In addition, the rule is intended to ensure that fraud complaints are filed solely to redress a wrong reasonably believed to have happened, rather than as a pretext for discovery. *See Lewis v. Varnes*, 368 F.Supp. 45, 47 (S.D.N.Y.), *aff'd*, 505 F.2d 785 (2d Cir.1974). Further, rule 9(b) is designed to minimize strike suits, *Segan v. Dreyfus Corp.*, 513 F.2d 695, 696 (2d Cir.1975) (per curiam), and to protect defendants from the potentially debilitating business consequences that flow from allegations of misconduct, *see Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir.1972); *F.A.G. I*, 7 C.I.T. at ——, Slip Op. 84–4, at 3.

---

**4.** *See F.A.G. I*, 7 C.I.T. at —— n. 1, Slip Op. 84–4, at 3 n. 1 ("Because Rule 9(b) of the Rules of the United States Court of International Trade is

identical to Rule 9(b) of the Federal Rules of Civil Procedure, authorities with respect to the latter provision are accordingly applicable.")

## A. Degree of Particularity Required

In its motion to dismiss, F.A.G. maintains that plaintiff should be required to state which of the 27,000 entries are implicated, what particular merchandise was entered by means of false statements, and which particular statements or descriptions are false and material. Defendant, F.A.G., further argues that the alleged substitutions and retroactive price increases were a legitimate business practice and nonthreatening to the revenue of the United States since these practices resulted in an overstatement of the entered value.

Defendant also claims that certain hiatuses are evident from the allegations of the second amended complaint. Paragraph 13 of the complaint alleges that during 1978, at least 14 percent of the imported merchandise was falsely described. Defendant therefore concludes that for the period between 1972 and 1977 plaintiff is proceeding on mere factual extrapolation.

■ The court, however, is of the opinion that the second amended complaint satisfies rules 8(a)(2) and 9(b), and for several reasons. The critical phrase of rule 9(b) is "the circumstances constituting fraud," and here plaintiff has set forth those circumstances. Indeed, plaintiff has set forth the time, place, and contents of the false representations. *See* 5 C. Wright & A. Miller, *supra*, § 1297, at 403; *see Bosse v. Crowell Collier & Macmillan*, 565 F.2d 602, 611 (9th Cir.1977); *see also King Automotive v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 1010 (C.C.P.A.1981). Plaintiff here has set forth the context, method, and result of the alleged fraud. Details concerning "marking out," "substitutions," "bonuses," and "discounts," lacking in the first amended complaint, fairly apprise defendant of the charges against it so that an answer may be prepared. Contrary to defendant's assertion that these facts merely represent "background details," the allega-

tions reflect the full nature of the allegedly fraudulent transactions.

■ Further, it is well recognized that where many complicated transactions are involved, covering a long period of time, courts will relax the rule 9(b) requirement. *See Temple v. Haft*, 73 F.R.D. 49, 53 (D.Del.1976).

■ Finally, and most importantly, the particularity requirement of rule 9(b) does not abrogate the enjoinder of rule 8 that pleadings set forth a short and plain statement of a claim. Rule 9(b) must be harmonized with Rule 8. 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 9.03, at 9-28 (2d ed. 1984). Generally, as long as a complaint gives a defendant notice with particularity, the philosophy of the rules and the concept of notice pleading have been met. *See Gilbert v. Bagley*, 492 F.Supp. 714, 725-26 (M.D.N.C.1980).[5]

Accordingly, the court finds that the second amended complaint meets the requirement of alleging fraud with particularity and sets forth a plain statement of the claim. Proof of the false descriptions alleged will await the trial of this action.

## B. Pleading upon Information and Belief

Defendant maintains that plaintiff has impermissibly extrapolated the facts by alleging fraud during the years 1972–1976. Admittedly, the computer printouts and statements from F.A.G. personnel do not relate to every single year involved here. Paragraph 19 of the second amended complaint pleads "upon information and belief ... [that] the documents [for 1972–1976] filed with the United States Customs Service ... were material and false."

■ Pleading fraud upon information and belief, while generally disfavored, is acceptable where accompanied by a statement of the facts supporting the belief. 5 C. Wright & A. Miller, *supra*, § 1298, at

---

**5.** Defendant relies on numerous securities fraud cases from the Second Circuit such as *Denny v. Barber*, 576 F.2d 465 (2d Cir.1978) and *Todd v. Oppenheimer & Co.*, 78 F.R.D. 415 (S.D.N.Y. 1978). In this connection, the court notes that

"the Second Circuit has consistently required far greater specificity in pleadings alleging fraud than have other circuits." Note, 97 Harv. L.Rev. 1432, 1433 n. 7 (1984).

416. Further, where as here the relevant facts are peculiarly within the province of the opposing party, courts have relaxed the rule. *See Schlick v. Penn-Dixie Cement Corp.* 507 F.2d 374, 379 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). In the instant case plaintiff has put forth sufficient facts with respect to the years 1972–1977 to withstand a dismissal motion. Paragraph 10 indicates that the information relating to 1977–1978 "is representative of shipments ... during any prior twelve months." Paragraphs 15 and 16 indicate to some degree a pattern of alleged fraudulent practices. Plaintiff's "extrapolations" upon information and belief, therefore, are permissible.

## C. Materiality

Defendant argues that the complaint alleges materiality in conclusory form. Defendant further claims that even accepting arguendo the allegations, they are immaterial because the dutiable value of the imported merchandise would be unaffected.

■ The complaint alleges that various officials of F.A.G. have, in effect, admitted to the practice of substitutions as well as to the other allegedly fraudulent practices. It is therefore clear that the imported merchandise and declared values were not what F.A.G. said they were in the entry documents. This, prima facie, spells

6. On July 2, 1984, the Court granted plaintiff's motion for leave to amend paragraph 24 of the second amended complaint to add an intent allegation. Amended paragraph 24, in part, reads: "F.A.G.–U.S. intentionally submitted these documents ... with the intent to defraud the United States." Defendant maintains that this added allegation does not satisfactorily establish an intent to defraud since the underlying facts, in defendant's view, have not been pleaded with sufficient particularity.

7. Counts II through VI of the second amended complaint, the nonfraud counts, in the court's view, clearly satisfy rule 8(a)(2)'s requirement that the claim be set forth in a short and plain statement showing that the pleader is entitled to relief. The discussion above relating to rules 8(a)(2) and 9(b) a fortiori establishes the legitimacy of the nonfraud counts under rule 8(a)(2). Regarding defendant's repeated attacks on

out at least the possibility of materiality since the basis of the appraisement of the merchandise may have been affected. Further, defendant's argument that the revenue of the United States was not threatened by the misdescription, and that, therefore, they were not material, is without merit. The prohibition of 19 U.S.C. § 1592 applies "[w]ithout regard to whether the United States is or may be deprived of all or a portion of any lawful duty." *Id.*

## D. Pleading of Facts Supporting an Inference of Fraud

■ The crux of defendant's argument in this respect is that a fraud complaint must allege facts establishing that the misstatements were made with an intent to defraud.[6] The resolution to this contention, however, is largely revealed by the court's earlier discussion of the balance to be struck between rules 8(a)(2) and 9(b). "The clear weight of authority is that Rule 9 requires specification of the time, place, and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." *McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 228 (1st Cir. 1980). The court considers the *McGinty* rationale proper in this context. Accordingly, the second amended complaint is not defective for failure to state the circumstances that give rise to an inference of fraud.[7]

plaintiff's alleged "extrapolations of fact," defendant is, in effect, impermissibly demanding the pleading of evidentiary facts. *See Gissen v. Colorado Interstate Corp.,* 62 F.R.D. 151, 154 (D.Del.1974). Finally, defendant's memoranda are peppered with references to the admittedly harsh, even draconian remedies available under 19 U.S.C. § 1592. The court recognizes that the amounts prayed for in the complaint are staggering. The fraud count alone seeks a penalty equal to the domestic value of all of F.A.G.'s entered merchandise, or more than $451.9 million. The court, while not unsympathetic to the business consequences of such a contingent liability, nevertheless recognizes that the severity of these remedies has been a jealously guarded tradition in American law. *See One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 237, 93 S.Ct. 489, 493, 34 L.Ed.2d 438 (1972). *See generally* Dickey, *Survivals From More Primitive Times: Customs Forfeitures in the Modern*

## III. THE "BY MEANS OF" REQUIREMENT AND TERAOKA

In *United States v. Teraoka*, 669 F.2d 577 (9th Cir.1982), the Ninth Circuit, in construing 18 U.S.C. § 542 (1982), the criminal law counterpart to 19 U.S.C. § 1592, held that section 542 was violated only where false statements resulted in the importation of otherwise excludable merchandise. The court opined that only prohibited or restricted merchandise could be entered "by means of" false entry documents within the meaning of section 542.

Defendant seizes on the identical "by means of" language in section 1592 and urges that because the ball/roller bearings in issue here were not prohibited or restricted merchandise, their entry was not accomplished "by means of" material and false entry documents. Defendant asserts, therefore, that the complaint fails to state a claim upon which relief can be granted.

While it is not necessary for the court to construe criminal law statutes, the contention of the defendant is without merit and would lead to absurd results in civil penalty and forfeiture-type cases. Such a restrictive reading of section 1592 would emasculate that provision, depriving the United States Government of one of its more effective and widely-used customs civil enforcement statutes. Moreover, false statements in civil penalty and forfeiture cases concerning value, origin, quantity, and price made in connection with the entry process have historically met the injunction of the "by means of" false statement requirement of civil statutes. *See United States v. Twenty-Five Packages of Panama Hats*, 231 U.S. 358, 359–60, 34 S.Ct. 63, 64, 58 L.Ed. 267 (1913) (applying the forfeiture provision of a 1909 act to attempted entry of falsely valued hats); *United States v. Brown*, 404 F.Supp. 968, 971 (S.D.N.Y.1975), *aff'd mem.*, 538 F.2d 315 (2d Cir.1976) (penalties under 19 U.S.C. § 1592 for falsely invoiced telephones).

*Commercial Setting Under Sections 592 and 618 of the Tariff Act of 1930*, 7 Law & Pol'y Int'l Bus.

## CONCLUSION

Plaintiff, in its second amended complaint, has satisfied the pleading requirements of rules 8(a)(2) and 9(b). Further, under 19 U.S.C. § 1592, plaintiff has stated a claim upon which relief can be granted. Accordingly, defendant's motion to dismiss for failure to state a claim must be, and hereby is, denied.

It is so ordered.